Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDWIN CHALUS,<br><br>   Plaintiff,<br><br>   v.<br><br>FIRST MIDWEST BANCORP, INC., MICHAEL L. SCUDDER, BARBARA A. BOIGEGRAIN, THOMAS L. BROWN, PHUPINDER S. GILL, KATHRYN J. HAYLEY, PETER J. HENSELER, FRANK B. MODRUSON, ELLEN A. RUDNICK, MARK G. SANDER, MICHAEL J. SMALL, and STEPHEN C. VAN ARSDELL,<br><br>   Defendants. | Case No:<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Edwin Chalus ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.  This is an action against First Midwest Bancorp, Inc. ("First Midwest" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their

1

violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of First Midwest by Old National Bancorp ("Old National").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, and the alleged misstatements entered and the subsequent damages occurred in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of First Midwest common stock.

7. Defendant First Midwest operates as the bank holding company for First Midwest Bank that provides various banking products and services. The Company is incorporated in

Delaware. The Company's common stock trades on the NASDAQ under the ticker symbol, "FMBI."

8. Defendant Michael L. Scudder ("Scudder") is Chairman of the Board of the Company and Chief Executive Officer of the Company.

9. Defendant Barbara A. Boigegrain ("Boigegrain") is a director of the Company.

10. Defendant Thomas L. Brown ("Brown") is a director of the Company.

11. Defendant Phupinder S. Gill ("Gill") is a director of the Company.

12. Defendant Kathryn J. Hayley ("Hayley") is a director of the Company.

13. Defendant Peter J. Henseler ("Henseler") is a director of the Company.

14. Defendant Frank B. Modruson ("Modruson") is a director of the Company.

15. Defendant Ellen A. Rudnick ("Rudnick") is a director of the Company.

16. Defendant Mark G. Sander ("Sander") is President, Chief Operating Officer, and a director of the Company.

17. Defendant Michael J. Small ("Small") is a director of the Company.

18. Defendant Stephen C. Van Arsdell ("Arsdell") is a director of the Company.

19. Defendants Scudder, Boigegrain, Brown, Gill, Hayley, Henseler, Modruson, Rudnick, Sander, Small, and Arsdell are collectively referred to herein as the "Individual Defendants."

20. Defendants First Midwest and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A. The Proposed Transaction

21. On June 1, 2021, First Midwest and Old National announced that they had entered

into a definitive merger agreement to combine in an all-stock merger. Under the terms of the merger agreement, First Midwest stockholders will receive 1.1336 shares of Old National common stock for each share of First Midwest common stock they own. Following completion of the Proposed Transaction, former First Midwest stockholders are expected to collectively represent approximately 44% of the combined company. The press release announcing the Proposed Transaction states, in pertinent part:

### Old National and First Midwest Announce Merger to Create a Premier Midwestern Bank

- $45 billion in total assets and $34 billion in total deposits
- Unlocks immediate scale and positions for continued in-market growth
- Accelerates opportunities to strengthen communities and drive positive change
- Transaction expected to close in late 2021 or early 2022

June 01, 2021 08:30 AM Eastern Daylight Time

EVANSVILLE, Ind. & CHICAGO--(BUSINESS WIRE)--Old National Bancorp ("Old National") (NASDAQ: ONB) and First Midwest Bancorp, Inc. ("First Midwest") (NASDAQ: FMBI), jointly announced today they have entered into a definitive merger agreement to combine in an all-stock merger of equals transaction with a total market value of $6.5 billion to create a premier Midwestern bank with $45 billion in combined assets.

With nearly 270 combined years of service and a shared commitment to Midwestern values, Old National and First Midwest are two organizations driven by a customer-centric approach to banking, an unwavering commitment to community and a strong focus on corporate social responsibility, making the combined entity the premier choice for employees, clients and shareholders.

Under the terms of the merger agreement, which has been unanimously approved by the Boards of Directors of both companies, First Midwest stockholders will receive 1.1336 shares of Old National common stock for each share of First Midwest common stock they own. Following completion of the transaction, former First Midwest stockholders are expected to collectively represent approximately 44% of the combined company. The new organization will operate under the Old National Bancorp and Old National Bank names, with dual headquarters in Evansville, Indiana and Chicago, Illinois. Michael Scudder, Chairman and CEO of First Midwest Bancorp, will serve as the Executive Chairman and Jim Ryan, Chairman and CEO of Old National Bancorp, will maintain his role as CEO.

4

Additional leadership positions for the combined entity include:

- Mark Sander, President and Chief Operating Officer (First Midwest)
- Jim Sandgren, CEO of Commercial Banking (Old National)
- Brendon Falconer, Chief Financial Officer (Old National)
- Kendra Vanzo, Chief Administrative Officer (Old National)
- Kevin Geoghegan, Chief Credit Officer (First Midwest)
- Thomas Prame, CEO of Community Banking (First Midwest)
- Chady AlAhmar, CEO of Wealth Management (Old National)

The complete executive leadership team is expected to be announced prior to close. The Board of Directors of the combined company will have 16 directors, consisting of 8 directors from Old National and 8 directors from First Midwest. Becky Skillman, lead independent director for Old National, will retain this position in the combined company.

*   *   *

**Timing**

The transaction is expected to close in late 2021 or early 2022 subject to customary closing conditions, including regulatory and shareholder approvals.

**Transaction Advisors**

Keefe, Bruyette & Woods, *A Stifel Company*, served as exclusive financial advisor and Squire Patton Boggs (US) LLP acted as legal advisor to Old National.

J.P. Morgan Securities LLC served as exclusive financial advisor and Sullivan & Cromwell LLP acted as legal advisor to First Midwest.

*   *   *

**About Old National**

Old National Bancorp (NASDAQ: ONB), the holding company of Old National Bank, is the largest bank holding company headquartered in Indiana. With $23.7 billion in assets, it ranks among the top 100 banking companies in the U.S. and has been recognized as a World's Most Ethical Company by the Ethisphere Institute for 10 consecutive years. Since its founding in Evansville in 1834, Old National Bank has focused on community banking by building long-term, highly valued partnerships and keeping our clients at the center of all we do. This is an approach to business that we call The ONB Way. Today, Old National's footprint includes Indiana, Illinois, Kentucky, Michigan, Minnesota and Wisconsin. In addition to providing extensive services in retail and commercial banking, Old National offers comprehensive wealth management, investment and capital market services. For

5

more information and financial data, please visit Investor Relations at oldnational.com.

**About First Midwest**

First Midwest (NASDAQ: FMBI) is a relationship-focused financial institution and one of the largest independent publicly traded bank holding companies based on assets headquartered in Chicago and the Midwest, with approximately $21 billion of assets and an additional $14 billion of assets under management. First Midwest Bank and First Midwest's other affiliates provide a full range of commercial, treasury management, equipment leasing, consumer, wealth management, trust and private banking products and services. The primary footprint of First Midwest's branch network and other locations is in metropolitan Chicago, southeast Wisconsin, northwest Indiana, central and western Illinois, and eastern Iowa. Visit First Midwest at firstmidwest.com.

22. On July 27, 2021, the Company filed a Schedule 14A Definitive Proxy Statement under Section 14(a) of the Exchange Act (the "Proxy Statement") with the SEC in connection with the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

23. The Proxy Statement, which recommends that First Midwest shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) the financial analyses performed by First Midwest's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan"), in connection with its fairness opinion; and (ii) potential conflicts of interest involving Company insiders.

24. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Background of the Merger; (ii) First Midwest's Reasons for the Merger; Recommendation of First Midwest's Board of Directors; (iii) Opinion of First Midwest's Financial Advisor; and (iv) Certain Unaudited Prospective Financial Information.

25. Unless and until the material misstatements and omissions (referenced below) are

remedied before the September 15, 2021 shareholder vote on the Proposed Transaction, First Midwest shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning J.P. Morgan's Analyses

26. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by J.P. Morgan.

27. With respect to J.P. Morgan's "*First Midwest Public Trading Multiples Analysis*" and "*Old National Public Trading Multiples Analysis*," the Proxy Statement fails to disclose the individual multiples and financial metrics of each company J.P. Morgan observed in its analyses.

28. The Proxy Statement fails to disclose the following concerning J.P. Morgan's "*First Midwest Dividend Discount Analysis*": (1) First Midwest's future dividend stream; (2) First Midwest's terminal value; (3) First Midwest's 2026 estimated net income, including the extrapolated projections for First Midwest for the years 2023 through 2026; and (4) the individual inputs and assumptions underlying the (i) multiple range of 12.5x to 14.5x, (ii) cost of equity range of 9.5% to 11.5%, and (iii) Common Equity Tier 1 target of 10.0%.

29. The Proxy Statement fails to disclose the following concerning J.P. Morgan's "*Old National Dividend Discount Analysis*": (1) Old National's future dividend stream; (2) Old National's terminal value; (3) Old National's 2026 estimated net income, including the extrapolated projections for Old National for the years 2023 through 2026; and (4) the individual inputs and assumptions underlying the (i) multiple range of 12.5x to 14.5x, (ii) cost of equity range of 9.5% to 11.5%, and (iii) Common Equity Tier 1 target of 10.0%.

30. The Proxy Statement fails to disclose the following concerning J.P. Morgan's analyses of analyst price targets for the common stocks of First Midwest and Old National: (1) the

individual price targets observed by J.P. Morgan in its analyses; and (2) the sources thereof.

31. The valuation methods, underlying assumptions, and key inputs used by J.P. Morgan in rendering its purported fairness opinion must be fairly disclosed to First Midwest shareholders. The description of J.P. Morgan's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, First Midwest shareholders are unable to fully understand J.P. Morgan's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Company Insiders' Potential Conflicts of Interest

32. The Proxy Statement omits material information concerning potential conflicts of interest involving Company insiders.

33. The Proxy Statement provides that certain First Midwest employees, including Defendants Scudder and Sander, will serve as either directors and/or officers of the combined company following consummation of the Proposed Transaction.

34. The Proxy Statement, however, fails to disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

35. Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the

Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

36. The Proxy Statement provides that "certain [purported] independent members of the First Midwest board [were] previously designated to serve as a transaction working group of the board to provide guidance and support to First Midwest management in connection with the pursuit and negotiation of a transaction with Old National (the "First Midwest transaction working group")[.]"

37. The Proxy Statement, however, fails to disclose the following concerning the First Midwest transaction working group: (1) the specific authority and powers of the First Midwest transaction working group; (2) the specific reasons the Board formed the First Midwest transaction working group, and when the group was formed; and (3) the identities of each member of the First Midwest transaction working group, including whether the Board considered whether these individuals faced any potential conflicts of interest in connection with the Proposed Transaction and any alternatives thereto, and if so, what those potential conflicts of interest are.

38. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

39. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

40. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of

9

the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

41. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

42. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

43. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

44. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

45. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

46. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy

Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

47. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

48. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

49. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

50. By virtue of the foregoing, the Individual Defendants have violated Section 20(a)

of the Exchange Act.

51. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: August 4, 2021

Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
    zhalper@halpersadeh.com

*Counsel for Plaintiff*